**Norman I. SAFERSTEIN, Arnold Kanarek, Sebastian Schiavone, Leonard Weiss and Ira E. Saferstein, Plaintiffs,**

**v.**

**PAUL, MARDINLY, DURHAM, JAMES, FLANDREAU & RODGER, P.C. and Bruce Rodger, individually, Defendants.**

**No. 95 Civ. 6325 (WCC).**

United States District Court,
S.D. New York.

June 10, 1996.

plaintiff's grievances fall short of alleging material misrepresentations or omissions.

Norman I. Saferstein, New York City, pro se.

Arnold Kanarek, Franklin Square, New York, pro se.

Sebastian Schiavone, Eastchester, New York, pro se.

Leonard Weiss, Mamaroneck, New York, pro se.

Ira E. Saferstein, Margaretville, New York, pro se.

Hawkins, White, Feretic, Daly, O'Neill & Maroney, New York City (John E. Hannum, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This diversity case, in which plaintiffs, *pro se*, assert claims for breach of contract, extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, and breach of fiduciary duty, is before this court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6). Jurisdiction over defendants in this matter is based upon New York's long-arm statute, section 302 of the New York Civil Practice

Law and Rules ("CPLR"). Plaintiffs have placed venue of this action in the Southern District of New York pursuant to 28 U.S.C. § 1391(a). Defendants have moved to dismiss the amended complaint on grounds that this court lacks jurisdiction over them, that venue is improper, and that the amended complaint fails to state a cause of action upon which relief can be granted. For the reasons discussed below, we order that this case be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

## BACKGROUND

Plaintiffs in this action were once clients of defendant Bruce Rodger ("Rodger") and his law firm, defendant Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C. (the "Law Firm"), in a security frauds action (the "Underlying Action"). The Underlying Action was brought in the Eastern District of Pennsylvania, and venue subsequently was changed to the District of Delaware, where it was tried in U.S. District Court for the District of Delaware. After a jury trial in July 1993, a verdict was returned in favor of the solvent defendants in that action.

The instant action arises out of defendants' representation of plaintiffs in the Underlying Action.[1] Non-party Paul Bucco ("Bucco"), an attorney with the firm of Nilon, Paul and Mardinly (also non-party), prepared the original summons and complaint in the Underlying Action. When Bucco began planning to embark in private practice and realized that the Underlying Action would require greater resources than he would be able to provide, he sought help from defendant Rodger and the firm with which he was working at the time, Kassab, Archbold, Jackson, and O'Brien. Rodger filed a Motion for Leave to File Amended Complaint and a proposed amended complaint on behalf of the plaintiffs in the Underlying Action in March 1992. Plaintiffs in the instant action allege that

defendant Rodger then went to plaintiff Norman Saferstein's home in New Rochelle, New York on May 2, 1992[2] "to present his qualifications, his favorable opinion of the merits and validity of [plaintiffs'] lawsuit against [defendants in the Underlying Action], negotiated in detail the terms of his Fee Agreement and discussed in detail the obligations and responsibilities he and his firm would assume when retained." Am.Compl. ¶ 4, at 2. Plaintiffs further allege that "[a] final agreement was reached at this New Rochelle meeting. It was at this meeting in [plaintiff Norman Saferstein's] house in New Rochelle where, unanimously, Bruce Rodger and his firm were engaged." *Id.* Soon afterwards, on May 18, 1992, Rodger left the Kassab law firm and joined the firm of defendant Paul, Mardinly Durham, James, Flandreau & Rodger, P.C.

Plaintiffs claim that the agreement reached at the New Rochelle meeting was reduced to writing in a letter dated July 20, 1992 from Rodger to Ira Saferstein, one of the plaintiffs in the Underlying Action as well as in the instant action. *See* Am. Compl.Ex. A. That letter reads in pertinent part as follows:

> As you know, I have assumed responsibility for representing the interests of you and the other plaintiffs in the above-referenced matter. Your former counsel, Paul Bucco, Esquire, will remain involved in this matter in an advisory capacity but he will no longer appear as counsel of record. I am writing to confirm the understanding that has been reached regarding my firm's compensation for our services in this matter and to bring you up to date regarding the status of the case.

> We have agreed that my firm will be entitled to receive as attorney's fees an amount equal to one-third (⅓) of the net amount that we are able to recover on your behalf through settlement, verdict or otherwise. As used herein, the term "net

---

1. Some, but not all, of the plaintiffs from the Underlying Action are plaintiffs in the instant action.

2. Although the amended complaint alleges without greater specificity that this visit occurred in May 1992, according to Rodger's statement pursuant to 28 U.S.C. § 1746, this visit occurred on or about May 2, 1992. *See* Mem. in Support of Defendants' Motion to Dismiss, Ex. C ¶ 10 ("Rodger Statement"). Plaintiffs do not dispute that this visit occurred on or about May 2, 1992. *See* Mem. in Opposition, at 1.

amount that we are able to recover" means the total amount recovered less costs and expenses incurred in connection with the litigation.

You and the other plaintiffs will be responsible for defraying the out-of-pocket costs and expenses that my firm will incur in connection with the litigation, to the extent and in the manner set forth hereinabove. At this early state of the litigation, it is impossible to predict with any degree of certainty the amount of costs and expenses that will be incurred.... I do not anticipate that this case will require any extensive travel, nor do I anticipate that significant amounts will have to be spent to create trial exhibits.

Per your request, and subject to the qualifications stated hereinabove, we have estimated that litigation-related costs and expenses will total approximately $8,000.00. You and the other plaintiffs have agreed to pay that sum to my firm to be held in escrow and to be applied toward litigation-related costs and expenses as they are incurred. If and when the amount of litigation-related costs and expenses exceeds $8,000.00 my firm will advance those additional costs subject to our right to be reimbursed for same out of the proceeds of any gross recovery that we obtain on your behalf through settlement, verdict or otherwise.

We have agreed to notify you prior to incurring any significant costs or expenses in excess of $8,000.00 and to obtain your prior approval therefor....

Regarding the status of the case, we are still awaiting a ruling on the Petition for Leave to File Amended Complaint that I filed on your behalf in March of this year. In the meantime, however, Judge Gawthrop of the United States District Court for the Eastern District of Pennsylvania determined that venue was improper in that Court and he entered an Order transferring the case to the United States District Court for the District of Delaware. I received notice last week that the case file has in fact been received by the Delaware court.

Presumably, the case will be assigned to a new District Judge within the next few weeks and I anticipate that he or she will make a prompt ruling on our Petition for Leave to Amend.

I do not consider Judge Gawthrop's decision to transfer the case to the U.S. District Court for the District of Delaware to be either a positive or a negative development. I have handled matters in the Delaware court before, and I have never been displeased with the results that I have been able to obtain there. Under the applicable Rules of Civil Procedure, our case arguably should have been commenced in the Delaware court in the first place ...

Am.Compl.Ex. A.

The gravamen of plaintiffs' case in the instant action is that defendants breached the agreement that was forged at the New Rochelle meeting, and committed extortion and misrepresentation by later requiring plaintiffs to pay additional money in order to get defendants to continue pursuing the Underlying Action. In addition, plaintiffs assert a claim for malpractice for defendants' failure to retain an expert witness in a timely fashion. Plaintiffs allege that Rodger delayed retaining an expert until he was able to "extort" from plaintiffs additional sums of money (on top of the $8,000 retainer), and that this delay caused the court in the Underlying Action to exclude plaintiffs expert's testimony. Finally, plaintiffs assert claims for fraud/conspiracy, unethical conduct, and breach of fiduciary duty for failing to disclose (1) that defendant in the Underlying Action had lodged a counter-claim against Mr. Maze (one of the plaintiffs in the Underlying Action) and (2) that Rodger was representing Mr. Maze on the counter-claim. Plaintiffs aver that a conflict of interest was created by simultaneous representation of plaintiffs on the one hand and Mr. Maze as counter-claim defendant on the other hand.

Defendants have moved to dismiss on grounds that (1) this court lacks in personam jurisdiction over defendants, Fed.R.Civ.P. 12(b)(2); (2) venue is improper, Fed.R.Fed.P. 12(b)(3); and (3) the pleadings fail to conform to Rules 8, 9, and 10 of the Federal Rules of Civil Procedure, and therefore fail

to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

### DISCUSSION

■ As a threshold matter, we must decide which issue—venue or jurisdiction—to take up first. The Second Circuit has intimated that trial courts should first decide the issue of personal jurisdiction and then proceed to consider the issue of venue, if the court finds that it has personal jurisdiction over the defendant. *See Arrowsmith v. United Press International,* 320 F.2d 219, 221 (2d Cir.1963) (en banc) ("We shall therefore ... remand the case for consideration of the issue of jurisdiction over the person of the defendant and, in the event that this be found, the issue of venue, prior to consideration of the merits."). However, the Supreme Court has suggested that because personal jurisdiction is not fundamentally preliminary in the same way that subject matter jurisdiction is, a court may consider venue first, before it considers the issue of personal jurisdiction, when there are sound reasons for doing so. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714–15, 61 L.Ed.2d 464 (1979) ("[W]hen there is a sound prudential justification for doing so ... a court may reverse the normal order of considering personal jurisdiction and venue."); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962) ("Nothing in [the language of the transfer statute, 28 U.S.C. § 1406(a),] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."). We assume that this Supreme Court precedent is still valid and address the issue of venue first.

■ Plaintiffs' amended complaint suffers from the fact that venue in the Southern District of New York is improper as to all claims except the claim for breach of contract. Pursuant to 28 U.S.C.A. § 1391(a) (West Supp.1996), "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1576 (Fed. Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). Where venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 1994 WL 74860, at *3 (S.D.N.Y. Mar. 7, 1994).

■ In the instant action, subsection 1 is not available to assert venue in the Southern District of New York because none of the defendants resides in New York. Subsection 3 is not available to assert venue because there is at least one other district—the Eastern District of Pennsylvania—in which the action can be brought (pursuant to subsection 1) because all defendants reside there. Therefore, the issue we must decide is whether the Southern District of New York also is a proper district in which to assert these claims pursuant to subsection 2 on the ground that Rodger's May 2, 1992 trip to plaintiff Norman Saferstein's home constitutes a "substantial part of the events ... giving rise to the claim[s]." 28 U.S.C.A. § 1391(a)(2) (West Supp.1996). The fact that substantial activities may have taken place in other districts is not dispositive. *Cf. Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992) ("Admonition against recognizing multiple venues has been disapproved."); *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 757 (S.D.N.Y.1995) ("Venue is proper in *each* district that is the situs of a substantial part of the events or omissions giving rise to

the claim.") (emphasis added). In the case of multiple claims, proper venue must be established with respect to each cause of action asserted. *PI, Inc.*, 907 F.Supp. at 757; *Jordache*, 1994 WL 74860, at \*3.

■ When interpreting 28 U.S.C. § 1391(a)(2) in the context of a breach of contract claim, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc.*, 907 F.Supp. at 757–58 (citing *Jordache*, 1994 WL 74860, at \*4). According to the amended complaint, the contract in the instant case was negotiated and finalized in New York during Rodger's visit to plaintiff Norman Saferstein's home on May 2, 1992, although the written form confirming the oral contract was not delivered until July 20, 1992. Defendants, while they dispute that the contract was executed in New York, concede that some discussions regarding Rodger's representation of plaintiffs in the Underlying Action took place at the New Rochelle meeting, or, at the very least, that Rodger went to New Rochelle to meet with plaintiffs with respect to Rodger's representation in the Underlying Action. Although it is not alleged that any breach occurred in New York, or that any part of the contract was to be performed in New York, the creation of the contract between the parties during Rodger's visit to New Rochelle constitutes a substantial part of the events giving rise to the breach of contract claim. For the foregoing reasons, venue is proper in the Southern District of New York as to plaintiffs' claim for breach of contract.

Venue is improper as to all other claims (extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, and breach of fiduciary duty). According to the amended complaint, the factual bases supporting these claims occurred outside New York. Plaintiffs allege no conduct forming the basis of any of these claims that took place in New York. Any extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, or breach of fiduciary duty which defendants may have committed against plaintiffs would have been committed in Pennsylvania or Delaware, where defendants reside and where they prepared for and litigated the Underlying Action, and venue would be appropriate in a district in one of those states pursuant to 28 U.S.C. § 1391(a)(1) or (2). However, since no substantial part of the events or omissions giving rise to plaintiffs' claims (except the first claim for breach of contract) occurred in New York, venue in this court is improper as to all claims except the claim for breach of contract.

■ As noted above, proper venue would lie in the Eastern District of Pennsylvania with respect to all claims asserted herein. Furthermore, defendants seemingly would be subject to in personam jurisdiction in that district. Therefore, rather than retaining jurisdiction over plaintiffs' claim for breach of contract, and dismissing all other claims pursuant to Fed.R.Civ.P. 12(b)(3), in the interest of justice, we order that this case be transferred to the Eastern District of Pennsylvania, where this case could have (and should have) been brought. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). A transfer may be made under 28 U.S.C. § 1404(a) or 1406(a) upon motion by either party or by the court *sua sponte*. *See Lead Indus. Assoc., Inc. v. OSHA*, 610 F.2d 70, 79–80 n. 17 (2d Cir.1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte*."); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371–72 n. 3 (2d Cir.1966) ("Once a proper objection to venue is made by a party, § 1406(a) allows the district judge to 'dismiss, or if it be in the interest of justice, transfer such case' to a proper venue. And where the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred.").

■ Section 1404(a) applies to claims for which venue is proper in this district; section 1406(a) applies to claims for which venue is improper in this district. Therefore, technically, we order transfer of the claim for breach of contract under section 1404(a), and transfer of all other claims under section 1406(a). Furthermore, the court has the power to transfer this suit to a district (or another district) where it might have been brought even though it does not have personal jurisdiction over defendants. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §§ 3827, 3844 (1986).

■ According to *Mobil Corp. v. S.E.C.,* 550 F.Supp. 67, 69 (S.D.N.Y.1982), parties should be provided notice and an opportunity to be heard when transfer is proposed *sua sponte* by the court. *See Abidekun v. Mary Imogene Bassett Hosp.,* 1996 WL 68555, at *3 (E.D.N.Y. Feb. 6, 1996) ("The Court will not rule on [the issue of transfer] until ... both sides have had an opportunity to be heard on the venue issue."); *Clisham Management, Inc. v. American Steel Bldg. Co.,* 792 F.Supp. 150, 156 (D.Conn.1992) ("In compliance with the requirement that parties be given prior notice of and an opportunity to be heard on a *sua sponte* motion to transfer venue, the court, after notifying the parties of its intentions, granted counsel ... an opportunity to argue on behalf of their respective clients the merits of such a transfer."); 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3844 (1986) ("The statute is broad enough that a judge can order transfer on his own initiative, but if the court is considering this course it should make that possibility known to the parties so that they may present their views about the transfer."). Here, the issue of venue has been raised and briefed by the parties, and we have decided that venue is improper in this district except with respect to the claim for breach of contract. The only remaining issue is whether to dismiss the claims that are not properly before this court for want of

venue, or transfer the case to another district in the interest of justice. We do not deem it necessary to solicit further arguments from the parties regarding whether transfer of venue is appropriate. Defendants have conceded in their briefs that venue lies in the Eastern District of Pennsylvania because all defendants reside there. 28 U.S.C. § 1391(a)(1). Plaintiffs have been afforded an opportunity to argue that venue is proper in the Southern District of New York, and we have concluded that only the claim for breach of contract may be pursued in this district. Plaintiffs can not complain that transfer is inappropriate because the alternative is dismissal of their entire case with the exception of the claim for breach of contract.[3] In this case, the interests of justice would be served by transferring this case to the Eastern District of Pennsylvania, where defendants reside and where a substantial portion of the acts upon which the claims asserted occurred during management and preparation of the Underlying Action for trial. The federal district court for the Eastern District of Pennsylvania would have jurisdiction over defendants, and many of the anticipated witnesses would be amenable to subpoena from that district. Moreover, the court there would be familiar with the state's laws regarding legal malpractice and other issues raised in this case. Plaintiffs would have to travel to the Eastern District of Pennsylvania to try this action. However, by continuing this action in this court, plaintiffs would be left with a claim for breach of contract, and would be required to re-file the remaining claims in another district. The interests of judicial economy would be served by trial of all the claims together.

## CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), venue of this case shall be transferred to the Eastern District of Pennsylvania. Pursuant to L.R. 26, the Clerk shall, upon expiration of five (5) days, mail to the Clerk for the Eastern Dis-

---

**3.** Furthermore, though we do not rule on the issue, it is dubious that defendant Law Firm is subject to personal jurisdiction in this court on the facts of this case. If this case were to contin-

ue in this court, plaintiffs most likely would be left with a claim for breach of contract against defendant Rodger.

738

trict of Pennsylvania certified copies of this opinion and order and of the docket entries in this case, and the originals of all other papers on file in this case.

SO ORDERED.