**Theodore ROTHSTEIN, Plaintiff,**

**v.**

**Mark C. CARRIERE, Multi–Media Distributing Co., Inc. a/k/a Multi–Media Distribution Co., a/k/a Multimedia Dist. Co. Inc. d/b/a Leisure Time Entertainment, Inc., and Leisure Time Products, Inc., Defendants.**

**No. 97 CV 7391(NG).**

United States District Court, E.D. New York.

March 24, 1999.

Robert F. Katzberg, Kaplan & Katzberg, New York City, for plaintiff.

Randy M. Friedberg, Law Offices of Randy Friedberg, New York City, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Invoking the court's diversity jurisdiction, plaintiff Theodore Rothstein brings this action against defendants Mark C. Carriere, Multi–Media Distributing Co., Inc. ("Multi–Media"), which does business as Leisure Time Entertainment, Inc., and Leisure Time Products, Inc. for malicious prosecution, intentional infliction of emotional distress and prima facie tort. Defendants move to dismiss the first amended complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction over them. They also move to dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406(a) on the basis that venue is improper in the Eastern District of New York; in the alternative, they seek transfer of the case to the Central District of California, pursuant to 28 U.S.C. § 1404(a).

## THE COMPLAINT

Plaintiff alleges the following in the first amended complaint: Plaintiff, a resident of Brooklyn, New York, is lawfully engaged in the adult entertainment business. Defendant Carriere, who resides in Brentwood, California, is also engaged in the adult entertainment business in this district. Carriere is the president, chief executive officer and majority shareholder of the corporate defendant Leisure Time Entertainment, Inc.

Leisure Time Entertainment, Inc., incorporated in Indiana, maintains offices in California and Indiana and is engaged in the adult entertainment business. Leisure Time Entertainment, Inc. includes many affiliated entities, such as defendant Multi–Media and defendant Leisure Time Products, Inc., which are also both engaged in the adult entertainment business. Multi–Media is incorporated in Indiana and maintains an office in Indiana. Leisure Time Products, Inc. is incorporated in California and maintains an office in California.

On June 3, 1993, Carriere was indicted in the State of Alabama on criminal charges of possession with intent to distribute obscene materials. Defendant Multi–Media was also indicted and charged with violating Alabama's obscenity laws. On January 4, 1994, Carriere was indicted by a federal grand jury in Louisville, Kentucky for violating federal obscenity laws. Defendant Leisure Time Products, Inc. was also indicted on similar charges. Carriere previously had been indicted and had pled guilty in three separate federal jurisdictions to obscenity and tax evasion charges.[1] Since one of the sentences he had received included a sentence of probation, Carriere faced possible incarceration for violating his probation if he were convicted on felony charges in Alabama and Kentucky.

In an effort to receive leniency for possible future sentences, Carriere met with Special Agent Matthew M. Pellegrino of the Federal Bureau of Investigation ("FBI") on March 18, 1994 at the Department of Justice in Washington, D.C. It was during this meeting, plaintiff alleges, that Carriere falsely and maliciously told investigators that plaintiff had been involved in criminal activities with Carriere in 1990 and 1991 involving transactions in obscene pornographic video tapes.

Carriere informed investigators that, on the recommendation of his then-sales manager, Donald Sarnblad, Carriere entered into a deal with Bizarre Video, located in Brooklyn, New York, in which Carriere agreed to mail a limited listing of Bizarre Video's tapes to a targeted group culled from Multi–Media's adult entertainment customer list. Plaintiff alleges that Carriere falsely and maliciously told investigators that plaintiff was the owner of Bizarre Video. In this regard, Carriere falsely explained that Morton Gordon, who is the actual owner of Bizarre Video, was merely serving as a front to conceal plaintiff's ownership. Carriere allegedly stated that it was plaintiff who controlled all decision-making and that plaintiff intended Carriere to sell and distribute obscene video tapes through Multi–Media's distribution network. Carriere also allegedly stated that, because of the success of the Bizarre Video materials, he authorized Sarnblad to arrange for the printing of a complete catalog of video tapes offered by Bizarre Video and that he and plaintiff each paid half of the printing costs. Moreover, it is alleged that Carriere falsely asserted that plaintiff represented to Sarnblad that Bizarre Video's tapes were "soft-core" pornography and that plaintiff had been selling them for years. Finally, Carriere falsely stated that, on his personal instructions, Sarnblad proposed to plaintiff that he accept cash in payment for the Bizarre Video tapes and that thereafter Sarnblad took cash to Brooklyn, New York, and plaintiff accepted it there.

Six months after Carriere's meeting in Washington, D.C., in September 1994, the State of Alabama dropped all charges against Carriere individually. He agreed on behalf of Multi–Media to plead guilty to certain obscenity charges and was sentenced to pay $50,000 in restitution and a $450,000 fine.

In April 1995, Carriere pled guilty in the U.S. District Court in the Western District of Kentucky based upon a cooperation agreement which envisioned a prison term of six months or less and a $500,000 fine. Just before sentencing on this plea, Special Assistant United States Attorney Gene Malpas wrote in a February 6, 1996 letter to the court, in relevant part:

> I am writing to inform you of the cooperation of Mark Carriere in an obscenity

---

1. The first amended complaint details each of these indictments. Carriere, on behalf of himself individually and his various companies, pled guilty to tax evasion in the Northern District of Indiana and to federal obscenity charges in the Central District of California and the Northern District of Florida. For these offenses, he paid a series of fines and restitution amounts, but he was not sentenced to any periods of incarceration. The district court in California also placed Carriere on probation as part of his sentence.

investigation being conducted by the Child Exploitation and Obscenity Section of the Department of Justice. I feel that it is appropriate to indicate that a very significant pornographer will be indicted in no small measure d[ue] to the efforts of Mr. Carriere.

On February 7, 1996, the day after the letter to the court, plaintiff along with Sarnblad, Morton Gordon and Bizarre Video were indicted in U.S. District Court for the Northern District of Florida in Tallahassee, Florida. The indictment charged seven counts of federal obscenity violations based on the distribution of Bizarre Video's obscene materials from Indiana and New York to Florida. If convicted on these charges, plaintiff faced up to 10 years in jail and fines up to $250,000.

Two days later, on February 9, 1996, Carriere was sentenced in the Western District of Kentucky. He received no prison time, despite prosecutors' request for six months of incarceration. He was assessed a $250,000 fine, and Multi–Media was fined $600,000.

During the pre-trial discovery proceedings in the prosecution against plaintiff in the Northern District of Florida, the government disclosed that Carriere was a co-operating witness in the case. At the same time, an affidavit filed with the district court revealed that Sarnblad denied the statements made by Carriere to the FBI. Specifically, he expressly denied that it was plaintiff who owned Bizarre Video or that plaintiff was involved in the transaction that Carriere had described between Multi–Media and Bizarre Video in New York. In addition, Eric Gutterman, another employee of Multi–Media, identified Morton Gordon as the owner of Bizarre Video and acknowledged that he delivered cash to Gordon in New York as payment for Bizarre Video's tapes. Documentary evidence, uncovered by the government from Multi–Media, later substantiated Sarnblad's denials and disputed Carriere's claims. After discovering that Carriere had lied with regard to plaintiff's

involvement in the transaction, the government moved to dismiss all claims against plaintiff on January 13, 1997. On January 17, 1997, the court granted the government's motion, resulting in dismissal of all charges against plaintiff.

On December 15, 1997, plaintiff filed this action, alleging malicious prosecution, intentional infliction of emotional distress and prima facie tort. He alleges that, as a result of Carriere's misconduct, he has suffered and continues to suffer "humiliation and upset, resulting in his suffering of severe mental and physical pain, including nervousness, tenseness, irritability, insomnia and headaches" and that, in defending himself against the indictment, he expended "substantial sums in costs and attorneys' fees."

## PERSONAL JURISDICTION

■ Defendants claim a lack of personal jurisdiction.

In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.

*Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir.1981) (internal citations omitted); *see also New Moon Shipping Co. v. Man B & W Diesel Ag,* 121 F.3d 24, 29 (2d Cir.1997). In analyzing the affidavits, the facts are construed in the light most favorable to the plaintiff with all doubts resolved in its favor, "notwithstanding a controverting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993). Prior to an evidentiary hearing, a disputed fact cannot be resolved in a

manner adverse to the plaintiff if plaintiff makes a prima facie showing that jurisdiction exists. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Here, discovery has not been completed, and there has been no evidentiary hearing; plaintiff therefore need offer only prima facie evidence of personal jurisdiction.

In a diversity action, a federal district court must examine the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether personal jurisdiction exists over a nonresident defendant. *See Cosmetech Int'l, LLC v. Der Kwei Enterprise and Co.,* 943 F.Supp. 311, 317 (S.D.N.Y.1996). Plaintiff argues that defendants are subject to personal jurisdiction under New York Civil Practice Law and Rules ("CPLR") § 302(a), specifically, Sections 302(a)(1) and 302(a)(3).

It is unnecessary to address whether plaintiff can come within Section 302(a)(1), the transacting business section, because he can readily establish jurisdiction under Section 302(a)(3)(ii), which provides that a non-domiciliary may be subject to suit in New York if it commits a tortious act outside the state, causing injury to persons or property within the state if the non-domiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Under Section 302(a)(3), the injury suffered by plaintiff may be economic as well as physical. *See American Network, Inc. v. Access America/Connect Atlanta, Inc.,* 975 F.Supp. 494, 497 (S.D.N.Y.1997); *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978). In *Sybron,* the seminal New York case on the locus of injury where economic injuries are claimed, the court, in an opinion by Chief Judge Breitel, determined that Section 302(a)(3) should be read broadly, to include commercial torts, even though the locus of injury may not be as readily identifiable in commercial cases as in personal injury actions. Distinguishing cases that had held that Section 302(a)(3) is not satisfied by remote injuries located in New York solely because of domicile or incorporation, the court found jurisdiction where plaintiff Sybron was a New York manufacturer whose alleged trade secrets—the subject of the suit—were acquired in New York and the loss of New York business was threatened.

Here, plaintiff alleges both physical and economic injury. The locus of these injuries is New York. Unlike plaintiffs who are injured in an accident out-of-state, who cannot invoke Section 302(a)(3) on the basis of their continuing injuries on their return to New York, *see, e.g., McCulley v. Anglers Cove Condominium Ass'n,* 977 F.Supp. 177, 179 (E.D.N.Y.1997), Rothstein was present in New York both at the time of Carriere's out-of-state tortious acts and during the pendency of the criminal indictment. This, then, is not a case of mere "resultant damages" in New York. *See McCulley,* 977 F.Supp. at 179.

Defendants contend that, for purposes of Section 302(a)(3), plaintiff's injury cannot be considered to be suffered in New York, as the tortious act causing the injury occurred either in Washington, D.C., where Carriere made the false statements to law enforcement officials, or in Florida, the site of the criminal indictment.

Defendants' analysis imposes too restrictive a reading on Section 302(a)(3). The very point of Section 302(a)(3) jurisdiction is its recognition of the possible division of the locus of a tortious act from the locus of injury it causes. For this reason, defendants' reliance on cases involving state jurisdictional statutes which do not recognize this division is misplaced. In *Nelson v. Bulso,* 979 F.Supp. 1239 (E.D.Wis.1997), the court applied Wisconsin law that, unlike New York law, required an act by the defendant within Wisconsin. The court found that injury in Wisconsin to a Wisconsin plaintiff did not give rise to jurisdiction where the defendant's malicious filing of a suit occurred in Tennessee. Similarly,

in *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir.1997), the court construed a Mississippi long-arm statute under which personal jurisdiction is proper if any element of the tort takes place in Mississippi; the court concluded that, under Mississippi law, damages in Mississippi arising from a maliciously prosecuted out-of-state suit did not give rise to jurisdiction. This analysis of Mississippi law does not alter my view that New York law, which expressly recognizes that out-of-state tortious conduct may cause New York injury, grants jurisdiction here.

Defendants offer no arguments to dispute the foreseeability of the consequences on plaintiff in this district as a result of Carriere's statements. Carriere knew plaintiff to reside and conduct business in New York, and his alleged false statements concerned plaintiff's conduct of business in the Eastern District of New York. The allegations against plaintiff included that he was the owner of Bizarre Video, a Brooklyn, New York company, and entered into a deal with Carriere in Brooklyn for the distribution of pornographic videos from this district in exchange for money that plaintiff received here. There can be no question that the defendants could reasonably foresee that making false statements to law enforcement officials for the purpose of instigating a criminal prosecution would have consequences on plaintiff in New York. Indeed, the litigation which is the source of plaintiff's claims was not a civil suit filed by the defendants in their chosen out-of-state forum but rather a federal criminal prosecution filed by the United States. It is the defendants' conduct in instigating the suit by providing false information about the Brooklyn business practices of a Brooklyn resident that led to plaintiff being indicted in Florida, not the choice of venue by federal prosecutors in the bringing of the criminal action in Florida. From the facts alleged, at least as likely a venue for the criminal case would have been New York. The defendants in this case could surely have anticipated, at the time of their alleged misconduct, that redress would be sought here, if anywhere.

The facts described above also establish that the exercise of jurisdiction over the defendants comports with due process. The connection to the forum is such that they could reasonably anticipate being haled into court here. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Defendants do not dispute that they earn substantial income from interstate commerce. With regard to defendants' revenues, plaintiff has submitted a variety of documents which detail, among other things, that Carriere reported an annual income of $6,000,000 from the revenues of his companies, which sell adult entertainment products throughout the states and internationally. These documents have not been challenged.

In sum, a prima facie showing of personal jurisdiction has been made.

## VENUE

Defendants also challenge the propriety of venue in this district. Where venue is challenged, it is plaintiff's burden to show that it is proper in the forum district. *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F.Supp. 731, 735 (S.D.N.Y.1996). In a case of multiple claims, proper venue must be established with respect to each cause of action asserted. *See id.* at 736. Here, plaintiff has alleged three legal theories, but the same factual allegations underlie all of the claims. Plaintiff asserts that venue is proper for all claims asserted in the Eastern District of New York pursuant to 28 U.S.C. § 1391(a)(2), which provides, in relevant part:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ...; (2) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated. . . .

Section 1391(a)(2) was amended in 1990 pursuant to the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 311, 104 Stat. 5114. *See Sacody Technologies, Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994). The amendment "supersedes a requirement that a diversity action be brought in the district where 'the claim arose.' " *Id.* Therefore, venue may be proper in more than one district. *See Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 1994 WL 74860, at *3 (S.D.N.Y.1994). And plaintiff need not establish that the Eastern District of New York has "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Neufeld v. Neufeld,* 910 F.Supp. 977, 986 (S.D.N.Y.1996) (citing *Leucadia Nat'l Corp. v. FPL Group Capital Inc.,* 1993 WL 464691, at *6 (S.D.N.Y.1993)).

█ Plaintiff suffered all of his injuries in this district. "The place where the harm occurred is . . . relevant for venue purposes." *New York Mercantile Exchange v. Central Tours Int'l, Inc.,* 1997 WL 370600, at *4 (S.D.N.Y.1997) (citing *Neufeld,* 910 F.Supp. at 986 (S.D.N.Y. 1996)). Moreover, all of the events regarding plaintiff, about which Carriere allegedly lied to law enforcement officials, namely, the events concerning transactions with Bizarre Video, took place in Brooklyn, New York. This is also relevant for venue purposes.

Defendants rely on *Engel v. CBS, Inc.,* 886 F.Supp. 728 (C.D.Cal.1995), where the court transferred a malicious prosecution action from California to New York. To begin with, it is not clear from the opinion in that case whether the court gave plaintiff's claims of injury in California any weight. To the extent it did not, I respectfully disagree. In any event, the underlying facts in *Engel* are far different from those presented here. In *Engel,* all of the underlying facts related to New York; not only was the suit brought by the defendants in New York but the events giving rise to the suit arose in New York. *See id.* at 732. Here, the contents of Carriere's statements related to plaintiff's conduct in Brooklyn, New York, and the criminal case was brought in Florida because the United States chose that venue, even though, given the underlying facts which related to plaintiff's Brooklyn, New York business, it could equally have been brought in New York. In sum, a substantial part of the events giving rise to the claim occurred here, and venue is proper in the Eastern District of New York.

## TRANSFER OF VENUE

In the alternative, defendants argue that this action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of Section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (citations omitted). As a general rule, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re *Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992).

The first inquiry under Section 1404(a) is whether this action might have been brought in the proposed district. The parties do not dispute that, under 28 U.S.C. § 1391(a), this action might have been brought in the Central District of California.

The second inquiry under Section 1404(a) is whether, considering the convenience of the parties, the convenience of the witnesses and the interests of justice, a transfer to the proposed district is appropriate. In addressing this second inquiry, "courts have employed a variety of factors that serve as a guidepost, none of which are singly dispositive." *Frasca v. Yaw,* 787 F.Supp. 327, 330 (E.D.N.Y.1992). These factors include:

> (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) availability of process to compel the attendance of witnesses to testify at trial; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

*Id.* at 330–31.

Convenience of witnesses is generally considered the most important consideration in determining a transfer of venue. *See Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 988 (E.D.N.Y.1991). "While the convenience of party witness [sic] is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 57 (N.D.N.Y.1990) (citations omitted).

Defendants, seeking the transfer in this case, bear the burden of "clearly establishing" that the factors weigh in favor of a venue change. *See Arrow Elecs., Inc. v. Ducommun, Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989). "The plaintiff's forum choice should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *S–Fer Int'l v. Paladion Partners,* 906 F.Supp. 211, 213 (S.D.N.Y. 1995); *see also In re Warrick,* 70 F.3d 736,

741 (2d Cir.1995) (finding that plaintiff's choice of forum is entitled to "substantial consideration").

In the present case, defendants contend merely that more parties and witnesses live in California than in New York. Specifically, defendants state that "several key witnesses," including Donald Sarnblad, Carriere's former sales manager, and Eric Gutterman, who delivered the cash to Morton Gordon, live in California. Plaintiff's witnesses, however, include not only himself, but Morton Gordon, owner of Bizarre Video, an employee of plaintiff, an expert witness and plaintiff's wife, all New York residents. Since defendants have failed to establish that it would be clearly inconvenient for the witnesses if the case were tried in the Eastern District of New York, plaintiff's choice of venue will not be disturbed.

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or in the alternative to transfer the case to the Central District of California is denied.

**SO ORDERED.**