Darcy *v.* Hankle.

JOSEPH DARCY *vs.* JOSEPH HANKLE & another.[1]

No. 00-P-509.

Berkshire. February 7, 2002. - May 24, 2002.

Present: JACOBS, KASS, & BERRY, JJ.

*Jurisdiction,* Personal, Long-arm statute, Nonresident. *Due Process of Law,* Jurisdiction over nonresident.

Where, in an action on a complaint for abuse of process and malicious prosecution, the defendant in New York, who had instigated a criminal proceeding for petit larceny against the plaintiff in Massachusetts, caused the plaintiff a tortious injury in Massachusetts, as opposed to causing the plaintiff to suffer the effects of a tortious injury that the defendant inflicted in New York [848-851], where the defendant's business contacts in Massachusetts were sufficient to establish personal jurisdiction [851-852], and where requiring the defendant to appear in a Massachusetts court accorded with fair play and substantial justice [852], this court reversed a Superior Court judgment dismissing the case for want of jurisdiction [852].

CIVIL ACTION commenced in the Superior Court Department on July 30, 1999.

A motion to dismiss was heard by *Daniel A. Ford,* J.

*Daniel R. Solin* for the plaintiff.

*Kevin M. Tierney* for the defendants.

KASS, J. Who would pick up a $20 bank charge was the modest controversy that set in motion events that culminated with the filing of a complaint for abuse of process and malicious prosecution. That action generated the two questions now before us: (1) Did the defendants cause the plaintiff a tortious injury in Massachusetts, as opposed to causing the plaintiff to suffer the effects of a tortious injury that the defendants inflicted in the State of New York? (2) Were the business contacts of the defendants in Massachusetts sufficient to establish personal

[1]Hankle Lumber, Inc.

jurisdiction? A judge of the Superior Court, acting on the pleadings, an affidavit, documents, and a deposition, allowed a defense motion to dismiss the complaint under Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974), for lack of jurisdiction over the person. We reverse.

1. *Facts.* Joseph Darcy is the president of Darcy Construction Corporation (Darcy Construction), a New York corporation based in New Lebanon, New York.[2] Darcy's personal domicile is Hancock, Massachusetts. On July 2, 1999, Darcy, in his corporate officer capacity, directed a subcontractor to pick up a load of eighteen yards of bark mulch from Hankle Lumber, Inc. (Hankle Lumber), which is located in East Nassau, New York. New Lebanon and East Nassau are villages located close to the Massachusetts/New York State line. Darcy had asked the subcontractor's driver "to tell Joe [Hankle] I would send a check back later that day to pay for the bark mulch." Over the years Darcy Construction had bought some $6,000 worth of material from Hankle Lumber and paid for it promptly. There was no history of slow payment or bad checks.

After the load of mulch was delivered to a job site in Richmond, Massachusetts, Darcy's brother gave the driver a company check payable to Hankle Lumber with the dollar amount left blank for Hankle Lumber to fill in. At the end of the work day Darcy called Hankle Lumber to find out what dollar amount he should record for the check he had sent over. Marie Hankle, who answered the telephone, said Hankle Lumber had not received a check in payment of Darcy's bark mulch purchase.[3] Darcy checked with the subcontractor and learned that it had been the driver's last day of work and that he was on his way to Cape Cod. Alarmed that the driver had apparently decamped with the partially blank check, Darcy phoned in a stop-payment order to Darcy Construction's bank the next morning.

What follows is a study in mulish behavior. The Darcy Construction check had, in fact, been dropped off at Hankle

---

[2]Joseph Darcy is the president and sole stockholder of Darcy Construction Corporation. Asked at his deposition what position he held with the company, Darcy replied, "I'm the owner, bookkeeper, estimator, worker."

[3]Darcy's brief refers to her as Mrs. Hankle.

Lumber. That information Hankle Lumber did not deign to pass on to Darcy Construction nor did it tell anyone there what dollar amount (it was $252.72) had been written onto the check. Hankle Lumber deposited the Darcy Construction check for collection and, because of the stop-payment order, it returned uncollected to Hankle Lumber on July 15, 1999. Joseph Hankle at once swore out a criminal information for petit larceny against Joseph Darcy, individually, in the Nassau Town Court. Later in the day, Darcy returned a telephone call from Hankle, explained the circumstances of the stop order, and said he would send over a check for $252.72 the next morning. Hankle said he wanted reimbursement for a $20 bank charge in connection with the bounced check. Darcy said he would send a check for that, but Hankle demanded cash. Darcy paid for the bark mulch, but refused to make the $20 cash payment. He knew nothing about the criminal proceeding that Hankle had already set in motion.

At 6:30 P.M. on July 26, 1999, ten days later, Darcy, while in Massachusetts, received a telephone call from a New York State police officer who asked where he lived so he could come and arrest him in connection with the Hankle Lumber complaint. "Either you come to me or I come to you, you decide," the police officer said to Darcy. On the evening of July 28, 1999, Darcy was obliged to appear in court. He retained counsel, and the case was dismissed. Forty-eight hours later, Darcy brought this action for abuse of process and malicious prosecution.[4] We shall set forth facts about the volume and style of Hankle Lumber's business in Massachusetts in our discussion of the applicable long-arm jurisdiction law.

2. *Jurisdiction over the person.* In allowing the defendants' motion to dismiss, the Superior Court judge ruled that Darcy had failed to show that Hankle or Hankle Lumber had inflicted a tortious injury upon him in Massachusetts, "as opposed to the manifestations or consequences of such an injury." In so doing he relied on *Cunningham* v. *Ardrox, Inc.*, 40 Mass. App. Ct.

---

[4]Darcy's complaint alleged a subplot to the mercantile drama. He and Hankle both ran logging businesses. Darcy had succeeded in obtaining a logging contract that Hankle had coveted. Embittered, Hankle had turned the machinery of the criminal justice system on Darcy.

279, 281-283 (1996), in which we explicated the distinction. The judge also ruled that the extent of Hankle Lumber's business in Massachusetts did not amount to the minimum contacts requisite for personal jurisdiction. See *id.* at 281.

The act Darcy complains about, Hankle's instigating criminal proceedings against him for an extortionate purpose, occurred in New York. If a Massachusetts court is to exercise personal jurisdiction over Hankle and Hankle Lumber, the source of its power so to do must fit within G. L. c. 223A, § 3(*d*), which provides that jurisdiction may attach as to a cause of action arising from the person's

> "(*d*) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]"

The tortious injury, therefore, must have occurred in Massachusetts. We are satisfied that it did. Hankle's making the petit larceny information against Darcy individually caused the New York State police to call Darcy in Massachusetts. This was a consequence of Hankle's complaint that Hankle might have anticipated and that he may have contrived. Several injuries, as pleaded in Darcy's complaint for abuse of process and malicious prosecution, then occurred. (1) Darcy was emotionally harmed, in the sense of being very upset, by a statement from an officer of the law that he would be arrested. Not learned in the law, Darcy would not understand that a New York police officer cannot drive across the State line and arrest a person in Massachusetts. (2) Darcy was sufficiently alarmed by the telephone call from the New York State trooper that he cancelled a business meeting to which he was on his way and, on advice of his wife, whom he had called immediately, called his lawyer in Pittsfield. As a consequence of missing his business meeting, Darcy claims his company lost definitively a $60,000 site-preparation job for which it was a finalist. (3) In addition to loss of business opportunity, Darcy also alleges loss of reputation and loss of credit as a result of the communication into Mas-

sachusetts of the criminal complaint.

The first line of defense of Hankle and Hankle Lumber is that Darcy suffered only "manifestations, effects and consequences" of a tortious act in New York. *Cunningham* v. *Ardrox, Inc.*, 40 Mass. App. Ct. at 282-283. In that case the plaintiff was working out-of-State (in Chicago) and was discharged, he claims, because of his age. He then removed to Massachusetts. He could not maintain a wrongful discharge action in Massachusetts against his out-of-State employer because the wrong and the injury occurred out-of-State and the loss of pay was a consequence. A more vivid example is physical injury from an out-of-State accident, and a subsequent return by the injured person to Massachusetts, where the injured person suffers pain and medical expenses. That suffering does not provide a basis for personal jurisdiction over the tortfeasor in a Massachusetts court under G. L. c. 223A, § 3(*d*); the wrong and the injury occurred out-of-State. See, e.g., *Walsh* v. *National Seating Co.*, 411 F. Supp. 564, 571 (D. Mass. 1976), in which the plaintiff was a Massachusetts resident injured by an out-of-State party in a bus accident in Maine. In each of those instances the injured person had transported the consequences into Massachusetts.

If the out-of-State wrong, however, causes shame, embarrassment, or loss of consortium in the forum State, that sort of injury constitutes the primary tortious injury in the forum State on which personal jurisdiction under G. L. c. 223A, § 3(*d*), may rest. *Noonan* v. *Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998).[5] Out-of-State wrongs that cause loss of sales or business opportunity in the forum State have similarly been held to be direct tortious injury rather than consequential harm. *Keds Corp.* v. *Renee Intl. Trading Corp.*, 888 F.2d 215, 218 (1st Cir. 1989). *Buckeye Assocs., Ltd.* v. *Fila Sports, Inc.*, 616 F. Supp. 1484, 1493 (1985). Perhaps closest to the case at bar on its facts is *Rothstein* v. *Carriere*, 41 F. Supp. 2d 381 (E.D.N.Y. 1999). In that case the defendant gave false statements to law enforce-

---

[5]Noonan, the plaintiff in that case, was an avid anti-tobacco activist in Massachusetts. Without his authority, The Winston Company, a manufacturer of cigarettes, used a photograph of Noonan in an advertisement for Winston cigarettes that ran in a magazine in France. Several copies made their way back to Massachusetts. The advertisement made Noonan appear to be a prize hypocrite.

ment officials in Washington, D.C., that resulted in the prosecution of the plaintiff in New York. At all times, the plaintiff Rothstein was in New York. The court observed that this was "not a case of mere 'resultant damages' in New York. . . . [T]he defendants could reasonably foresee, that making false statements to law enforcement officials for the purpose of instigating a criminal prosecution would have consequences on plaintiff in New York."[6] *Id.* at 385-386.

In each of the cases cited in the preceding paragraph, the out-of-State wrong, rather like a missile, sailed over State borders to the forum State where it inflicted predictable tortious injury. So here. We conclude that, for purposes of G. L. c. 223A, § 3(*d*), the tortious act of Hankle and Hankle Lumber in New York caused injury to Darcy in Massachusetts.

The next line of inquiry is whether due process requirements in the constitutional sense are satisfied. *Connecticut Natl. Bank* v. *Hoover Treated Wood Prods., Inc.*, 37 Mass. App. Ct. 231, 233 (1994). Have the defendants purposefully established minimum contacts in Massachusetts, or, more particularly, have the defendants, as commercial actors, directed their efforts toward residents of Massachusetts? *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 477 (1985). See generally *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945); *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 7-11 (1979); *Haddad* v. *Taylor*, 32 Mass. App. Ct. 332, 333-336 (1992).

From August 1, 1997, to October 28, 1999, Hankle Lumber made at least forty-seven sales to eleven different customers in Massachusetts and made deliveries to customers in Massachusetts on at least fourteen occasions.[7] To one customer alone, Shaker Village in Pittsfield, there were at least nineteen sales and three deliveries. The dollar volume of Hankle Lumber sales to Massachusetts customers for the first ten months of 1999 was $14,152.62, a larger number than for the entire preced-

---

[6]The pertinent New York long-arm provision, New York Civil Practice Law and Rules § 302(a)(3)(ii), like its Massachusetts analog, provides that a nonresident may be subject to suit in New York, if he commits a tortious act outside the State that causes injury to persons or property within the State. *Rothstein* v. *Carriere*, 41 F. Supp. 2d at 385.

[7]Counsel for Darcy counts fifty-seven sales and thirty-seven deliveries in Massachusetts to eight customers.

ing calendar year. Hankle Lumber, therefore, was conducting consistent and increasing business in Massachusetts. The contacts of Hankle Lumber with Massachusetts customers are not "isolated incidents." *Balloon Bouquets, Inc.* v. *Balloon Telegram Delivery, Inc.*, 18 Mass. App. Ct. 935, 937 (1984). It is not determinative that the dollar volume of that business, in an absolute sense, was modest or that it was a small percentage of Hankle Lumber's over-all gross. The revenue derived was sufficiently substantial for Hankle willingly to service the business. When making deliveries to Massachusetts customers, Hankle Lumber invoked "the benefits and protection of [the Commonwealth's] laws." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958).

Finally, as to whether requiring the defendants to appear in a Massachusetts court accords with "fair play and substantial justice," *International Shoe Co.* v. *Washington*, 326 U.S. at 320, it is hardly offensive to require the defendants to appear in a court sufficiently near so that Hankle found it convenient and profitable to make deliveries to the city, Pittsfield, in which the court was located.

On these facts, we decide that the defendants maintained contacts with Massachusetts sufficient to invest Massachusetts courts with personal jurisdiction over them.

The judgment dismissing the case for want of jurisdiction is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*