**COSMETECH INTERNATIONAL, LLC, Plaintiff,**

v.

**DER KWEI ENTERPRISE AND CO., LTD. and Wormser Corp., Defendants.**

**No. 95 Civ. 9993 (RWS).**

United States District Court, S.D. New York.

Oct. 9, 1996.

Parker Chapin Flattau & Klimpl, New York City (Stephen G. Rinehart, of counsel), for plaintiff.

Cummings & Lockwood, Stamford, CT (Timothy G. Ronan, of counsel), for Defendant Der Kwei Enterprise.

Littman, Krooks & Ross, New York City (Richard A. Roth, of counsel), for Defendant Wormser Corp.

## OPINION

SWEET, District Judge.

Defendant Der Kwei Enterprise & Co., Ltd. ("Der Kwei") moves, pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss this action as against Der Kwei for lack of personal jurisdiction, as well as insufficiency of service of process. For the reasons set forth below, the motion will be denied.

### Parties

Plaintiff Cosmetech is a New York corporation engaged in the business of sourcing, designing and distributing supplies, packaging and sundries for the cosmetics business. Cosmetech's customers are located in New York State, throughout the United States, and worldwide.

Der Kwei is a Taiwan corporation engaged in the manufacture and sale of, *inter alia,* injection-molded plastic packaging for use in the cosmetics industry.

Defendant Wormser Corporation ("Wormser"), a New Jersey corporation, is a distributor of cosmetic supplies and is a direct competitor of Cosmetech.

### Prior Proceedings

The complaint in this action was filed on November 27, 1995. The complaint asserted claims against Der Kwei for breach of contract, unfair competition, tortious interference with business relations and unlawful price discrimination pursuant to 15 U.S.C. § 13(a), and claims against Wormser for unfair competition, tortious interference with business relations, tortious interference with contract and violation of 15 U.S.C. § 13(f).

By letter dated December 20, 1995, counsel for Der Kwei demanded that plaintiff withdraw the complaint for lack of *in personam* jurisdiction because Der Kwei has no presence, agents or offices in the United States. Der Kwei's counsel threatened sanctions under Rule 11 of the Federal Rules of Civil Procedure if the complaint was not withdrawn as against Der Kwei.

On January 31, 1996 a pretrial conference was held before this Court, at which the Court granted Cosmetech leave to take discovery on the issue of Der Kwei's claim of lack of jurisdiction, with discovery to be completed and any motions filed by March 13. Der Kwei completed the production of docu-

ments at the end of May 1996. On May 31, 1996, Der Kwei filed the instant motion to dismiss. The motion was considered fully submitted on July 10, 1996.

*Facts*

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). The facts as presented here are construed accordingly, and they are limited to this motion.

Der Kwei sells and ships its products to various cosmetics companies throughout the world, including the United States and New York State. Many of Der Kwei's major accounts are located in New York, including Revlon, Estee Lauder, Elizabeth Arden, Avon Products and Cosmair. In 1994, Der Kwei reported international sales totaling approximately $19 million.

In January 1988, Cosmetech and Der Kwei entered into an agreement whereby Cosmetech agreed to offer Der Kwei products to Cosmetech's customers, and Der Kwei agreed to accept Cosmetech's orders. Der Kwei and Cosmetech also agreed to jointly develop certain products, together with customized tooling and processes, for the exclusive use of Cosmetech and its customers. Der Kwei agreed not to sell directly to Cosmetech's customers, disclose any proprietary information concerning Cosmetech's customers or its products to Cosmetech's competitors, and not to assist any competitor in taking business from Cosmetech. The Cosmetech accounts which were to be protected by this agreement included several customers located in New York. The oral agreement was formed largely through telephone and telecopier communication between Cosmetech and Der Kwei.

Pursuant to the parties' agreement, Cosmetech's purchases were funded by letters of credit posted with New York banks. Der Kwei received payment by drawing on the New York letters of credit. All goods destined for sale in the Eastern United States were shipped to Cosmetech's freight forwarder in New York. During the period from 1993 through August 1995, Cosmetech purchased $3.5 million of goods from Der Kwei.

In furtherance of its ongoing marketing efforts in the United States, Der Kwei frequently sent its top officials to New York. Documents produced by Der Kwei in discovery show that its officials traveled to New York in October 1989; February and March 1990; September 1990; May and June 1991; November 1991; January 1992; December 1992; May 1993; January 1994; June 1995; December 1995, and January 1996. The Der Kwei officials who came to New York most frequently were Chin–Te Wang ("Wang"), Der Kwei's General Manager and a 20% shareholder, and Grace Tsai ("Tsai"), its Sales Vice President.

On each of these occasions, Der Kwei's management met with customers and distributors in New York, such as Revlon, Estee Lauder, Lancome, Del Labs and Cosmair. On at least six of these visits—September 22, 1990; May 28, 1991; November 4, 1991; December 8, 1992; May 5, 1993, and January 1, 1994—Der Kwei's management met with officials of Cosmetech. During the meetings with Cosmetech in New York, Der Kwei accepted orders for goods, discussed the design and manufacture of components for Cosmetech's customers, discussed strategies for expanding Der Kwei's sales in New York and the United States, met with Cosmetech's customers, and reaffirmed the arrangement protecting Cosmetech's customers and products, including extending the agreement to South America and Canada.

In December 1992 Wang and Tsai met with Cosmetech in New York City. Among other issues, the parties planned the design and building of a new tool to be utilized in the manufacture of a lipstick cup for Makeup Artists Corporation ("MAC"), a Canadian corporation. At the meeting in New York, Der Kwei and Cosmetech reviewed blueprints, reached agreement on sharing the cost of the new tool, and discussed price, quantity and production and shipment schedules. In addition, it was agreed that this new tool and cup were for the exclusive use of Cosmetech and its customer, MAC.

Also in December 1992, Wang and Tsai, along with Bart Wolfe of Cosmetech, visited Del Labs, one of Cosmetech's New York accounts. As a result of this meeting, Der Kwei ultimately shipped some 5,000,000 pieces to Del Labs in New York. Similarly, Cosmetech met with Wang and Tsai in New York in May 1993. The parties discussed extending the agreement protecting Cosmetech's accounts to Der Kwei's sales in South America, and Cosmetech agreed to disclose the names of Cosmetech's South American accounts to Der Kwei.

Der Kwei uses an American company, ("Package Works"), to provide technical consulting services to Der Kwei's United States customers. Bernard Braun ("Braun") is the President and sole shareholder of Package Works, a Connecticut corporation with its principal place of business at Mr. Braun's home in Wilton, Connecticut. When performing technical consulting services for Der Kwei, Package Works uses the "doing business as" name of "Der Kwei Enterprise Technical Services, U.S.A." ("DK/USA"), and uses DK/USA letterhead. Documents prepared by Der Kwei frequently refer to DK/USA as the "U.S. Office" of Der Kwei. In connection with the establishment and operation of DK/USA, Der Kwei paid for the purchase and/or installation of telephones, telephone lines, answering machines, computers, and automated drafting equipment. In addition, Der Kwei paid for business cards and stationery displaying the names of both DK/USA and Der Kwei. "Der Kwei Enterprises" is listed in the Fairfield County, Connecticut telephone directory.

Braun's responsibilities and activities on behalf of Der Kwei in the United States included at least the following:

Communications with United States customers, including Cosmetech, concerning pending orders, design issues, customer complaints, defective merchandise and technical support;

Marketing strategy for Der Kwei in the United States, including plans to increase demand for Der Kwei products;

Preparation of technical drawings bearing Der Kwei's logo;

Policies regarding Der Kwei's relationships with existing customers, such as Cosmetech;

Arranging and attending meetings in New York between Der Kwei's management and its New York accounts (including Cosmetech);

Sending and receiving samples between Der Kwei and New York;

Paying chargebacks to New York customers for rejected or nonconforming goods;

Soliciting new accounts, including distribution of the Der Kwei catalogue and samples in New York;

Inspection of goods claimed to be defective;

Direct negotiations with customers;

Advice on the acquisition of real property in the United States for the use of an entity called Der Kwei Ongko Marketing Services, USA ("DK/Ongko"), and on an employment agreement between Der Kwei and Anthony Halim, manager of DK/Ongko;

Designing new machines and fixtures for Der Kwei;

Preparing "Requests for Quotation" for customer orders.

Braun was also involved in the ongoing relationship between Der Kwei and Cosmetech. For example, Der Kwei's agreement not to sell to Cosmetech's accounts was reconfirmed in a writing dated June 1, 1993 and signed by Braun.

According to the complaint, beginning in or about February 1994, Der Kwei, together with Wormser, a competitor of Cosmetech, began to appropriate Cosmetech's accounts and the exclusive products, tools and processes developed by Cosmetech pursuant to Cosmetech's agreement with Der Kwei. For example, Der Kwei, through Wormser, began selling the MAC lipstick cup to a competitor of one of Cosmetech's customers—the same MAC lipstick cup whose design, marketing and exclusivity were agreed to at a meeting in New York in December 1992 between Cosmetech, Wang and Tsai.

It is alleged that in further breach of the parties' agreement, in July of 1995, management of Der Kwei and Wormser met at Del

Labs in Farmingdale, New York. The purpose of the meeting was to shift Del Labs' business away from Cosmetech. The complaint alleges that Der Kwei utilized confidential information it learned from Cosmetech concerning Del Labs in order to take that business. In 1995 the relationship formally terminated, and this action ensued.

On December 4, 1995, a process server arrived at Mr. Braun's residence in Connecticut and attempted to serve upon him, on behalf of Der Kwei, a copy of the summons and complaint in this action. The process server did not advise Mr. Braun as to the nature of the delivery. The process server asked for his name, and asked if he had the office of Der Kwei Enterprise Technical Services, U.S.A. He did not inquire whether Mr. Braun was authorized to accept service on behalf of Der Kwei, or if he was otherwise affiliated with, or employed by, Der Kwei. He then asked Mr. Braun to sign for the package, and left, before Mr. Braun had the opportunity to examine the package. The package included the summons and complaint in this action, which was addressed to "Der Kwei Enterprise and Co., Ltd. c/o Der Kwei Enterprise Technical Services, U.S.A., 17 Overidge Lane, Wilton, CT 06897–3223." Service was also later effectuated by personal delivery to Wang and Tsai at Der Kwei's offices in Taiwan.

### Discussion

### I. *Service of the Summons and Complaint Was Proper*

■ Der Kwei urges that Der Kwei has not been properly served with process. On December 4, 1995, a process server delivered a copy of the summons and complaint in this action—addressed to "Der Kwei Enterprise and Co., Ltd. c/o Der Kwei Enterprise Technical Services, U.S.A., 17 Overidge Lane, Wilton, CT 06897–3223."—to Braun at his residence in Connecticut. On June 3, 1996, the summons and complaint were personally delivered to Wang, General Manager, and Tsai, Sales Vice President, at Der Kwei's offices in Hsin Chu, Taiwan.

Rule 4(h)(2) of the Federal Rules of Civil Procedure provides that service upon a corporation outside the United States may be made "in any manner prescribed for individuals by subdivision (f). . . ." Rule 4(f), in turn, delineates the permissible methods of service upon individuals in foreign countries:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; . . . .

Taiwan is not a party to the Hague Convention. However, Taiwan law expressly permits service upon a corporation by delivery to "the manager concerned." *See* Taiwan Code of Civil Procedure Article 131. Service was made upon Der Kwei's officer and its managing agent, Wang and Tsai. Accordingly, proper service under Taiwan law was made, and hence, service was valid under Fed.R.Civ.P. Rule 4.[1]

### II. *Personal Jurisdiction*

### A. *The Legal Standards*

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Implicit is the understanding that a plaintiff bears the burden of establishing jurisdiction over a defendant; however, until "a full evidentiary hearing or a trial on the merits is held, [a plaintiff] need only set forth prima facie evidence of personal jurisdiction." *Beacon Enters, Inc., v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983).

---

1. The provision under Fed.R.Civ.P.Rule 4(m) for service within 120 days of filing of the summons expressly does not apply to service in a foreign country.

In this action, discovery has been completed, but no evidentiary hearing has taken place. Accordingly, to defeat this motion, Cosmetech need only offer *prima facie* evidence of personal jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197–98 (2d Cir.1990); *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F.Supp. 113, 115 (S.D.N.Y.1991).

A federal court presiding over a diversity action must look to the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether personal jurisdiction exists over a nonresident defendant. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–225 (2d Cir.1963) (en banc)). Cosmetech alleges that Der Kwei is subject to *in personam* jurisdiction under CPLR section 302(a)(1), (a)(2), and (a)(3)(ii).

C.P.L.R. section 302(a) provides, in relevant part:

> As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; ...
> >
> > 2. commits a tortious act within the state causing injury to person or property within the state ...
> >
> > 3. commits a tortious act without the state causing injury to person or property within the state ... if he
> >
> > > \* \* \* \* \* \*
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from
>
> interstate or international commerce ...

*Id.*

The court must determine the issue of personal jurisdiction separately for each cause of action asserted in the plaintiff's complaint. *See Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731, 734 (E.D.N.Y.1985) (finding jurisdiction for declaratory judgment cause of action, but not for unfair competition and unjust enrichment causes of action) (*citing Sterling Television Presentations v. Shintron*, 454 F.Supp. 183 (S.D.N.Y.1978)). *See also Darby Drug Company, Inc. v. Zlotnick*, 573 F.Supp. 661 (E.D.N.Y.1983); *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521 (S.D.N.Y.1971).

Based on the pleadings and affidavits before the Court, Cosmetech has met its initial burden of making out a *prima facie* case for *in personam* jurisdiction over Der Kwei as to each cause of action.

### B. Jurisdiction Under Section 302(a)(1)

Under CPLR section 302(a)(1), personal jurisdiction exists over a nondomiciliary who transacts business in New York, as long as the cause of action arises out of the subject matter of the business transacted. *See* CPLR § 302(a)(1); *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

The transacting business prong of section 302(a)(1) confers jurisdiction over "a defendant who purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Viacom Intern., Inc. v. Melvin Simon Productions*, 774 F.Supp. 858, 862 (S.D.N.Y.1991). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied sub nom. Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

CPLR § 302(a)(1) authorizes the court to exercise jurisdiction over non-domiciliaries for contract and tort claims arising from a defendant's transactions of business in New York. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the

defendant never enters the state, if the claim arises out of the transaction:

> It [CPLR 302(a)(1)] is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). *See also Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970).

A foreign defendant's travel to New York for negotiation, execution, or performance of a contract in New York has been held to constitute the transaction of business for jurisdictional purposes. *See Berk v. Nemetz*, 646 F.Supp. 1080, 1083 (S.D.N.Y.1986). Der Kwei is alleged to have transacted business in New York in connection with the performance of Der Kwei's contract with Cosmetech. According to the complaint, Wang and Tsai, members of Der Kwei's top management, traveled to New York City at least six times between January 1988 and January 1996 to meet with Cosmetech in New York.

In considering the relevance of Der Kwei's visits to New York, the Court must look to the specific facts of each visit, and determine whether the Defendant performed purposeful acts in New York in relation to the contract. *A.C.K. Sports, Inc. v. Doug Wilson Enterprises, Inc.*, 661 F.Supp. 386, 390 (S.D.N.Y. 1987). Cosmetech alleges that during these meetings Der Kwei accepted Cosmetech's orders for goods, new products were planned and designed, and meetings were held with Cosmetech's customers, as had been initially agreed to in the original oral contract. In addition, Plaintiff alleges that during the meetings held in New York with Der Kwei, Der Kwei reconfirmed its original agreement regarding the protection of Cosmetech's customers and products. Der Kwei's alleged activities in New York are sufficient to confer personal jurisdiction over the defendant in this Court based on Cosmetech's breach of contract claim. Cosmetech's cause of action for breach of contract is directly related to Der Kwei's activities in New York—*i.e.*, its partial performance in New York of the contract with Cosmetech.

Jurisdiction under § 302(a)(1) is further supported by Braun's substantial activities in New York on behalf of Der Kwei. Cosmetech alleges that Braun is Der Kwei's United States representative, and that he conducts business in New York on behalf of Der Kwei as DK/USA. DK/USA represented itself to Cosmetech as a necessary part of the Der Kwei Company, and provided many services to Der Kwei's United States customers, including Cosmetech, in New York.

■ Jurisdiction under section 302(a)(1) may be exercised over a nondomiciliary who through its own actions or through an agent transacts business in New York. Plaintiff need not establish a formal agency relationship between Der Kwei and DK/USA to establish jurisdiction based on DK/USA's transaction of business in New York. *See Kreutter v. McFadden Drilling Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). Cosmetech need only show that DK/USA engaged in purposeful activities in New York which were for the benefit of and with the knowledge and consent of Der Kwei, and that Der Kwei exercised some control over DK/USA in the matter. *Id.*

Cosmetech has shown that DK/USA provided technical services in New York to New York-based clients of Der Kwei, including coordinating shipments, responding to complaints and making inspections of goods in New York and making payment of chargebacks to Der Kwei's New York clients for rejected goods. Cosmetech alleges that Der Kwei necessarily knew of and exercised some control of DK/USA's activities, based on Der Kwei's payment of DK/USA's monthly telephone and telecopier bills, and its payment of the initial costs of setting up the office, including the purchase of DK/USA stationary that lists Der Kwei's Taiwan address as the head office. Finally, Braun submitted to Der Kwei receipts for reimbursement of payments to Der Kwei's New York customers.

In light of Der Kwei's transaction of business in New York, and the nexus between

that business and Cosmetech's breach of contract claim, personal jurisdiction exists pursuant to CPLR section 302(a)(1) over Cosmetech's breach of contract claim.

### C. *Jurisdiction Under Section 302(a)(2)*

 This Court has jurisdiction over Cosmetech's cause of action for tortious interference with business relations pursuant to CPLR section 302(a)(2). Section 302(a)(2) provides for jurisdiction over a defendant who "commits a tortious act within the state, causing injury to person or property within the state." Cosmetech alleges that Der Kwei's June 1995 meeting in New York with Cosmetech's client, Del Labs, constituted tortious interference with Cosmetech's business with Del Labs. Cosmetech asserts that it was at this meeting in New York that Der Kwei induced Del Labs to shift its business away from Cosmetech and toward Wormser in violation of the agreement between the parties. Accordingly, Cosmetech has alleged facts sufficient to support this Court's jurisdiction over the tortious interference claim based on section 302(a)(2).

### D. *Jurisdiction Under Section 302(a)(3)*

 It remains for the Court to determine whether personal jurisdiction exists over Der Kwei for Cosmetech's claims for unfair competition and for violation of 15 U.S.C. § 13(a). Section 302(a)(3)(ii) provides personal jurisdiction over a nondomiciliary who commits a tortious act without the state, causing injury within the state, if the nondomiciliary expects or should reasonably expect the acts to have consequences in the state and derives substantial revenue from interstate or international commerce. *See Finest Fruits, Inc., v. Bertuca,* 714 F.Supp. 94, 98 (S.D.N.Y.1989).

Cosmetech alleges that Der Kwei committed a tortious act outside of New York, by breaking its promise to protect Cosmetech's accounts and trade secrets, and not to disclose Cosmetech's proprietary or commercially sensitive information to Cosmetech's competitors. Cosmetech alleges that, beginning in February 1994, Der Kwei provided Wormser, a New Jersey corporation and Cosmetech competitor, with confidential and proprietary information concerning the

names and purchasing requirements of Cosmetech's accounts. Cosmetech further alleges that Der Kwei sold its products to Wormser at prices substantially lower than the prices charged Cosmetech for the same products. Cosmetech alleges that, as a result of such discriminatory pricing, it lost many of its accounts to Wormser, Cosmetech's competitor. These allegations, taken as true for purposes of this motion, are sufficient to establish that Der Kwei committed a tortious act without the state which gave rise to Cosmetech's causes of action for unfair competition and for violation of 15 U.S.C. § 13(a).

 In order for jurisdiction to be properly premised on section 302(a)(3)(ii), Der Kwei's tortious act must have caused injury in New York. Der Kwei correctly notes that, for purposes of section 301(a)(3) jurisdiction, an injury does not occur in New York simply because the plaintiff is domiciled, incorporated or in business there. *See Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122 (1980). However, the Second Circuit has recognized that, in locating the situs of a commercial injury, courts should look to where the plaintiff lost business. *See Cleopatra Kohlique, Inc., v. New High Glass, Inc.,* 652 F.Supp. 1254, 1257 (E.D.N.Y.1987); *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978). Here, Plaintiff is not simply domiciled in New York; rather, Plaintiff alleges it lost New York-based customers—and therefore suffered injury in New York—as a result of Der Kwei's unfair competition practices and underpricing of goods to Wormser. *See Cavalier Label Co. v. Polytam, Ltd.,* 687 F.Supp. 872, 879 (S.D.N.Y.1988) (citing *Granada Television, Int'l, Ltd. v. Lorindy Pictures Int'l, Inc.,* 606 F.Supp. 68, 72 (S.D.N.Y. 1984)). These allegations are sufficient to support jurisdiction under section 302(a)(3).

 Finally, to establish personal jurisdiction over Der Kwei under CPLR section 302(a)(3)(ii), the Court must determine that the non-domiciliary has reason to foresee that its actions will produce forum consequences, *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 206, 413 N.Y.S.2d 127, 385 N.E.2d 1055

**320**

(1978), and derives substantial revenue from interstate or international commerce.

It is not disputed that Der Kwei derives substantial revenue from interstate or international commerce. In 1994, Der Kwei reported international sales totaling approximately $19 million. Between 1993 and August 1995, Der Kwei sold $3.5 million of goods to Cosmetech. The Court further finds that Der Kwei had reason to foresee that its actions would produce forum consequences. Der Kwei is alleged to have shared information about New York clients of a New York-based business with a direct competitor of that New York-based business. In addition, Der Kwei is alleged to have engaged in unfair competition by underpricing to Wormser the same goods sold at a higher price to Cosmetech.

It was foreseeable that such actions would have consequences in New York. In order to meet the test for section 302(a)(3)(ii) jurisdiction, it is sufficient that the defendant foresee the possibility of forum consequences generally. *Cleopatra Kohlique, Inc., v. New High Glass, Inc.,* 652 F.Supp. 1254, 1257 (E.D.N.Y.1987). Der Kwei's actions readily meet that test. Accordingly, this Court has jurisdiction over Cosmetech's claims for unfair competition and for violation of 15 U.S.C. § 13.

### Conclusion

For the reasons set forth above, Defendant's motion to dismiss is hereby denied.

It is so ordered.