Robert **AINBINDER** and Robert
Barra, Plaintiffs,

v.

Robert **POTTER** and Tri–Star Coal
Sale, Inc., Defendants.

No. 03 Civ. 1383(JGK).

United States District Court,
S.D. New York.

Sept. 19, 2003.

### OPINION and ORDER

KOELTL, District Judge.

The plaintiffs, Robert Ainbinder ("Ainbinder") and Robert Barra ("Barra") have sued the defendants, Robert Potter ("Potter") and Tri–Star Coal Sale, Inc. ("Tri–Star"), for damages allegedly arising out of a mining project in Pennsylvania. The plaintiffs assert three causes of action. The first claim alleges that the defendants breached the terms of a settlement agreement. The second claim is for unjust enrichment. The third claim alleges fraud and unjust enrichment.

The defendants have now moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing for each count that there is no personal jurisdiction over the defendants and that the plaintiffs have failed to state a claim upon which relief can be granted. In the alternative, the defendants have moved to transfer this case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) for the convenience of the

parties and witnesses and in the interests of justice.[1]

## I.

The relevant facts as alleged in the Complaint and the agreements referenced therein are as follows. This suit arises out of a series of agreements relating to the plaintiffs' attempt to mine a Pennsylvania property known as the Barca Pit. (*See* Compl. ¶ 8.) In January 1997, the plaintiffs first contracted with Peter Pastusic ("Pastusic"), a surface coal miner doing business as Bernice Mining & Contracting Corp. ("Bernice"). (*Id.* ¶ 7.) As of early 1999, the mining had not begun, and Pastusic requested additional funds from the plaintiffs. (*Id.* ¶¶ 12–13.) In February and April 1999, the plaintiffs agreed to loan Pastusic money and provide additional funding. (*Id.* ¶¶ 13–18.) Mining still did not commence, leading the plaintiffs to seek an accounting for the use of funds. (*Id.* ¶ 21.) Pastusic, however, died in November 1999. (*Id.* ¶ 22.)

Upon Pastusic's death, Bernice came under the control of David Pfleegor ("Pfleegor") who subsequently assigned his interest in Bernice to Potter, who controlled Tri–Star, a West Virginia corporation. (*Id.* ¶¶ 5–6, 27.) After failed attempts to resolve the earlier dispute with Bernice, the plaintiffs filed suit in this Court in March 2001, including Potter and Tri–Star as defendants. (*Id.* ¶ 30, Ex. F); *see Ainbinder v. Bernice Mining & Contracting, Inc.*, No. 01 Civ. 2492, 2002 WL 461576 (S.D.N.Y. Mar. 26, 2002). On December 11, 2001, the plaintiffs entered into a settlement ("Settlement Agreement") with Potter. (Compl. ¶ 42, Ex. G.) The Settlement Agreement was reflected in the transcript of a settlement conference before Magistrate Judge Peck. *See Ainbinder v. The Estate of Peter Pastusic, et al.*, No. 01 Civ. 2492, at 7–8 (S.D.N.Y. Dec. 11, 2001) (transcript).

Under the Agreement, Potter agreed to sign as a guarantor for a portion of a loan, which the plaintiffs were seeking in order to procure two rock trucks for mining the Barca Pit. (*Id.* ¶ 43, Ex. G.) In exchange, the plaintiffs' action against Potter and Tri–Star was to be dismissed with prejudice. (*Id.* ¶ 45, Ex. G.) However, in the event that the equipment loan was rejected, the Settlement Agreement directed that "the parties will, in the first instance, negotiate in good faith to resolve the matter, and if they are unable to do so then the settlement will be null and void and the plaintiffs will be able to reinstitute suit against Mr. Potter." (*Id.*)

Even with Potter as guarantor, Ainbinder and Barra were unable to secure an equipment loan. (Compl. ¶ 45). The parties, however, were able to renegotiate their agreement, and sometime in March to May of 2002 they reached a new agreement regarding the equipment ("Equipment Agreement"). (*See* Compl. ¶ 48, Ex. I; Def. Robert Potter's and Tri Star Coal Sale Inc.'s Mem. of Law in Support of their Mot. to Dismiss and Mot. to Transfer Venue ("Def.Mem.") at 5–6, Ex. 1.)[2]

---

**1.** The plaintiffs assert that the defendants' motion is defective for reasons such as having an incorrect heading or index number. (Aff. of Robert Ainbinder in Support of Mot. in Opp. ("Opp.Mot.") ¶¶ 3–8.) The argument is frivolous because dismissals for mere technical defects are disfavored when the other party has not been prejudiced. *See Waksman v. Cohen*, No. 00 Civ. 9005, 2002 WL 31466417, at *4 n. 3 (S.D.N.Y. Nov. 4, 2002) (refusing to deny defendants' motion for summary judgment based on technical defect); *cf. Arfons v.*

*E.I. Du Pont De Nemours & Co.*, 261 F.2d 434, 435 (2d Cir.1958) (stating general principle that pleadings should not be dismissed for technical defects not going to the merits).

**2.** The plaintiffs state that the new agreement was reached March 21, 2002, while the defendants assert that the Equipment Agreement was not finalized until May 10, 2002, as memorialized in a letter they attach as Exhibit 1. The disagreement goes to the defendants' charge that the plaintiffs have attempted to

Under the new terms Potter agreed to use his credit to purchase two rock trucks for the plaintiffs in the amount of $65,000; the plaintiffs agreed to make installment payments until they owned the trucks outright. (Def.Mem.Ex. 1) In May 2002, Potter delivered the trucks and received payments from the plaintiffs in May and June 2002. (Compl.¶¶ 49–51.) In July 2002, however, the Mine Safety and Health Administration ("MSHA") inspected the mine site and mining equipment and declared the rock trucks unsafe because the front-end steering cylinder had excessive play and the right tire rods were illegally welded and strapped together. (Compl.¶¶ 52–54.) The MSHA noted that Casterline Diesel ("Casterline"), the dealer who sold the trucks, should never have allowed the trucks off the lot in the first place. (Compl.¶ 56.)

The plaintiffs allege that Potter was notified of the situation but refused to take any action. (Compl.¶ 55). In order to avoid being fined by the MSHA, the plaintiffs had to put the trucks out of use, which caused them to shut down the mine. (Compl.¶¶ 57–58.) The plaintiffs assert that in failing to provide new trucks, Potter breached the Settlement Agreement and caused $15,000,000 in damages resulting from the closing of the mine. (Compl.¶ 59.)

The plaintiffs make other factual assertions under the second and third counts in the complaint regarding coal sales allegedly owed to the plaintiffs (Compl.¶¶ 66–67) and an alleged scheme by the defendants to defraud the plaintiffs, as well as the state and federal governments (*see* Compl. ¶ 77).

## II.

The defendants move to dismiss the Complaint for lack of personal jurisdiction over Potter, a citizen of West Virginia, and Tri–Star, a West Virginia corporation "doing business in West Virginia." (*See* Compl. ¶¶ 5–6.) The action was brought on the basis of diversity jurisdiction, and thus personal jurisdiction is determined by the law of the forum state, New York. *See, e.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Days Inn of Am. v. L.A., Inc.*, No. 97 Civ. 5476, 1998 WL 765182, at *2 (S.D.N.Y. Nov. 3, 1998). Because there has not been an evidentiary hearing in this case, the plaintiffs need only make a prima facie showing of personal jurisdiction over the defendants, and the pleadings are to be interpreted in the light most favorable to the plaintiffs. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir.1993); *Hoffritz for Cutlery, Inc.*, 763 F.2d at 57; *Days Inn*, 1998 WL 765182, at *2.

Under New York law, defendants can be sued for all purposes if they are present or "doing business" in New York. N.Y. C.P.L.R. § 301; *see, e.g., Landoil Res. Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990) (explaining that "doing business" under § 301 requires defendant to be engaged in such continuous, permanent, and substantial activity in New York as to warrant finding that it is "present" in this jurisdiction (quotations omitted)), *quoted and cited in Fort Knox Music v. Baptiste*, 139 F.Supp.2d 505, 509 (S.D.N.Y.2001). There are no allegations that the defendants in

---

perpetrate a "fraud on the Court" by attaching to their Complaint an unsigned agreement, which, the defendants claim, excludes important terms. (*See* Def. Mem. at 10–11. *Compare* Compl., Ex. I, *with* Def. Mem., Ex. 1.) The allegation of fraud is not well taken.

There is no evidence that the plaintiffs intended to misrepresent the agreement. Moreover, as explained below, there is no material difference between the two documents for purposes of the current motion.

this case fall under that provision. Personal jurisdiction, therefore, must be based on a waiver by the defendants, or on New York's long-arm statute, C.P.L.R. § 302. Because this is a matter of specific jurisdiction, each cause of action must be analyzed separately. *Landau v. New Horizon Partners, Inc.,* No. 02 Civ. 6802, 2003 WL 22097989, at *3 (S.D.N.Y. Sept. 8, 2003); *Cosmetech Int'l, LLC v. Der Kwei Enter. & Co.,* 943 F.Supp. 311, 317 (S.D.N.Y. 1996).

The defendants also move to dismiss each count of the Complaint for failure to state a claim upon which relief can be granted.[3] On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998); *Cohen v. Koenig,* 25 F.3d 1168, 1172–73 (2d Cir.1994). The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' present motion should be granted only if it appears that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon,* 147 F.3d at 188; *Goldman,* 754 F.2d at 1065; *VTech Holdings Ltd. v. Lucent Tech., Inc.,* 172 F.Supp.2d 435, 437 (S.D.N.Y.2001).

In deciding the motion, the Court may consider documents referenced in the Complaint and documents that are in the plaintiffs' possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *VTech Holdings Ltd.,* 172 F.Supp.2d at 437.[4] Where, as here, the plaintiffs are proceeding pro se, although the same standards for dismissal apply, a court should give the pro se litigants special latitude in responding to a motion to dismiss. *See McPherson v. Coombe,* 174 F.3d 276, 279 (2d Cir.1999) (noting that courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994))); *Cooney v. Consol. Edison,* 220 F.Supp.2d 241, 244 (S.D.N.Y.2002).

### III.

The first cause of action alleges that Potter breached the Settlement Agreement by failing to provide two satisfactory rock trucks. The defendants argue lack of jurisdiction on the grounds that there is no personal jurisdiction over them for the alleged breach of the Equipment Agreement, which, they claim, is distinct from the Settlement Agreement. Second, the

---

**3.** As the defendants note in their motion, there is a question over which state's law should apply to this case. The defendants contend that Pennsylvania law should apply, but they readily admit that the Court need not resolve the choice-of-law issue to rule on the motions to dismiss because there is no material difference between New York and Pennsylvania law with respect to claims of breach of contract, unjust enrichment, and fraud. The plaintiffs have not disputed that allegation.

**4.** The defendants argue that the plaintiffs, in their Opposition papers, have attempted to bolster their complaint by adding new allegations that must be disregarded. (Reply at 2–3 (citing *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 687 F.Supp. 832, 836 (S.D.N.Y. 1988) for the proposition that a claim to relief may not be amended by briefs in opposition to a motion to dismiss).) The allegedly new facts have no effect on the Court's determination of the motions.

defendants argue that the plaintiffs cannot state a claim for breach of the terms of the Equipment Agreement.

■ Parties may waive a personal jurisdiction defense by consent, and jurisdiction based on consent satisfies the requirements of due process. *Days Inn*, 1998 WL 765182, at \*2 (collecting cases). As the defendants acknowledge, when a defendant submits to a court-ordered settlement agreement, the court maintains personal jurisdiction over that party in a suit to enforce the settlement. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974); *see also Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 834 (5th Cir.1986) (citing the Court of Appeals for the Second Circuit in explaining that "where a party agrees to a stipulation and settlement, it has consented to the court's jurisdiction and cannot later contest personal jurisdiction in a suit to enforce the settlement agreement").

The defendants argue, however, that the plaintiffs' suit is not to enforce the terms of the Settlement Agreement, itself, but rather to enforce the Equipment Agreement that was made outside of New York and was not specifically recognized by the Court. The issue, then, becomes whether the defendants' waiver of personal jurisdiction regarding the Settlement Agreement encompasses the Equipment Agreement; or, in the alternative, whether the Settlement Agreement qualifies as a transaction of business within the state, sufficient for jurisdiction under New York's long-arm statute for a suit arising out of the Equipment Agreement. *See* N.Y. C.P.L.R. § 302(a)(1) (providing jurisdiction as to a cause of action over a non-domiciliary who "transacts any business within the state").

Because the defendants consented to jurisdiction regarding the Settlement Agreement, this Court has jurisdiction to enforce the Equipment Agreement if the agreements are so related as to be part of the same transaction. *See Days Inn*, 1998 WL 765182, at \*3–4. In *Days Inn*, for example, the parties had signed a licensing agreement and guaranty agreement, but only the licensing contract contained a consent-to-jurisdiction clause. *Id.* at \*1–2. This Court noted that, under New York law, all writings forming part of a single transaction are to be construed together. *Id.* at \*3; *see also This Is Me v. Taylor*, 157 F.3d 139, 143 (2d Cir.1998); *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir.1993). Because the agreement and guaranty concerned the same subject matter and the guaranty was intended as an inducement to execute the agreement, the two instruments "were plainly part of the same transaction." *Days Inn*, 1998 WL 765182, at \*4. The consent-to-jurisdiction clause in the agreement thus applied to the guaranty. *Id.*

Under the Settlement Agreement in this case, the plaintiffs' original suit was dismissed with prejudice,

> provided, however, that . . . if the equipment lender rejects the equipment lending even with a guarantee from Mr. Potter, then the parties will, in the first instance, negotiate in good faith to resolve the matter, and if they are unable to do so then the settlement will be null and void and the plaintiffs will be able to reinstitute suit against Mr. Potter.

(Compl.¶ 45, Ex. G.) The equipment lending was rejected, a possibility contemplated in the Settlement Agreement. (*See* Compl. ¶¶ 45–48.) Therefore, pursuant to the Settlement Agreement, the parties negotiated to resolve the matter and entered into the Equipment Agreement. Under the new agreement, Potter would use his own line of credit to purchase two rock trucks and provide them to the plaintiffs in exchange for monthly installment payments. (Compl.¶¶ 46–48.)

Not only was the Equipment Agreement reached within the context of the Settlement Agreement, but the primary purpose of the Equipment Agreement was identical to the Settlement Agreement: enabling the plaintiffs to obtain two rock trucks. *See This Is Me,* 157 F.3d at 143 (approving jury instruction that read, "[A]ll writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together. . . ."). The only difference between the agreements is that Potter, instead of being the guarantor for a loan, became, in effect, the lender. Moreover, the Equipment Agreement explicitly recited that it was "[i]n consideration of part of your settlement agreement in the matter of Robert Ainbinder and Robert Barra v. The Estate of Peter Pastusic et al. commenced in the United States Courthouse, Southern District of New York." (Def.Mem.Ex. 1); *see Days Inn,* 1998 WL 765182, at *4 (observing that the guaranty "specifically recite[d] that it was an inducement . . . to execute the [Licensing] Agreement"). Had the parties not made the Equipment Agreement, the Settlement Agreement would have been null and void. *See Commander Oil Corp.,* 991 F.2d at 53 (noting that agreements should be interpreted as a whole if there would have been no bargain had a certain promise been stricken).

The Settlement and Equipment Agreements, therefore, constitute the same transaction and must be read as a whole. This Court, having personal jurisdiction over the parties to the Settlement Agreement with respect to a suit arising out of that agreement, also has personal jurisdiction over the same parties in connection with a suit concerning the modified contractual terms falling under that Agreement. The defendants, having consented to jurisdiction to obtain the settlement, cannot now contest this Court's personal jurisdiction over them with respect to the Equipment Agreement.[5]

■ Even if there were no personal jurisdiction under a waiver theory, negotiating a settlement agreement in New York would fall under the "transacting business" prong of New York's long-arm statute, C.P.L.R. § 302(a)(1). There is no question that the defendants came to New York to negotiate and enter into the Settlement Agreement. That was the transaction of business in New York. For example, in *International Longshoremen's Ass'n v. West Gulf Maritime Ass'n,* 605 F.Supp. 723 (S.D.N.Y.1985), the plaintiff sought enforcement of an administrative arbitration award. The Court found that the defendant's participation in those proceedings created jurisdiction both "on the ground of consent, and on the ground that they transacted business in New York out of which this litigation arises." *Id.* at 728 n. 7. Similarly, in *Sasso v. Gallucci,* 112 Misc.2d 865, 447 N.Y.S.2d 618 (1982), the defendant had "transacted business" under Section 302(a)(1) by entering into a court-ordered settlement agreement concerning stock that later became the subject of suit. *Id.* at 620; *see also Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975) (evaluating presence in New

**5.** The plaintiffs rely on diversity of citizenship for subject matter jurisdiction and do not contend that the Court retained subject matter jurisdiction to enforce the Settlement Agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (declaring that enforcement of a settlement agreement requires its own basis for subject matter juris-

diction because it is more than just a continuation or renewal of the dismissed suit). At the same time, the defendants concede that there is personal jurisdiction over them with respect to claims arising out of the Settlement Agreement and the only issue is whether the Equipment Agreement is sufficiently part of the Settlement Agreement to be part of the same transaction.

York to negotiate a settlement agreement under the long-arm statute but finding no transaction of business because the settlement was separate and distinct from the allegedly breached contract).

Under New York law, for Section 302(a)(1) to apply, the cause of action must "arise out of" the defendants' activities in New York. *See, e.g., CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). The plaintiff must show a "substantial relationship" or some "articulable nexus between the business transacted and the cause of action." *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981). For a non-domiciliary to "transact business" in New York, the defendant must have "purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000) (internal quotation omitted); *CutCo Indus., Inc.,* 806 F.2d at 365; *Clarendon Nat'l Ins. Co. v. Lan,* 152 F.Supp.2d 506, 516 (S.D.N.Y.2001). Preliminary negotiations conducted in New York qualify as a "transaction of business" if they have "substantially advanced or were substantively important or essential to the formation" of a contract outside New York. *CMNY Capital, L.P. v. Perry,* No. 97 Civ. 6172, 1998 WL 132846, at *5 (S.D.N.Y.1998) (internal quotation and citation omitted), *see also Clarendon,* 152 F.Supp.2d at 517.

The Equipment Agreement arose out of the Settlement Agreement, and the negotiations concerning the Settlement Agreement were essential to the formation of the Equipment Agreement. The settlement in New York provided essential terms for the later agreement: the parties, the subject matter of two rock trucks, and the requirement that the defendants would provide some form of financial support. The Equipment Agreement was part of the consideration for the Settlement Agreement. The settlement negotiations thus were "substantially important" to the Equipment Agreement upon which this action is based. *See Sasso,* 447 N.Y.S.2d at 620 (upholding jurisdiction where an action merely involved the "subject matter"-interest in stock-of a New York settlement agreement and not enforcement of the settlement agreement itself); *Berk v. Theatre Arts of W. Va.,* 157 Misc.2d 696, 598 N.Y.S.2d 418, 421–22 (1993) (permitting jurisdiction over West Virginia theater company because auditioning plaintiff in New York "substantially advanced the contract negotiations"). Moreover, in obtaining the settlement, the defendants purposefully availed themselves of the protection of the laws of New York-namely, a dismissal with prejudice from the original suit. *See Sasso,* 447 N.Y.S.2d at 620 (determining that the defendant's "participation [in a settlement agreement] constitutes sufficient purposeful activity to subject her to jurisdiction"). Therefore, the defendants' motion to dismiss Count I for lack of personal jurisdiction is denied.

The defendants also move to dismiss Count I for failure to state a claim upon which relief can be granted. The basis of the plaintiffs' claim is that the defendants breached the Equipment Agreement (and thus the Settlement Agreement) by providing trucks that, prior to use by the plaintiffs, were in a defective condition and could not meet Pennsylvania safety standards. (*See* Compl. ¶¶ 52–56; Opp. Mot. ¶¶ 21–22.) The defendants respond that they had no duty to repair the trucks or provide new ones because under the terms of the Equipment Agreement, the plaintiffs were to be responsible for all maintenance and repairs of these two trucks.

Although at times the plaintiffs' papers describe the defendants' breach as a

failure to repair the trucks, construed in the light most favorable to the plaintiffs, the Complaint alleges that the defendants breached the Equipment Agreement by providing trucks that were not satisfactory when delivered. (*See* Compl. ¶¶ 33, 55–56, 65; Opp. Mot. ¶¶ 21–22.) The plaintiffs have alleged that under the Equipment Agreement, the defendants had a duty to provide trucks that were in compliance with safety regulations and were suitable for use at the mine site. According to the Complaint, the MSHA inspection found that the trucks were illegally "Geri-rigged" and should never have left the dealer's lot. (Compl.¶¶ 56, 65.) Having been red-tagged by the MSHA, the trucks could no longer be driven or used, and, according to the plaintiffs, this forced them to shut down the mine. (Compl.¶¶ 57–58.) The plaintiffs thus have made allegations sufficient to claim that the defendants provided defective trucks in breach of the agreement, and that the breach caused the plaintiffs damages.

The fact that the plaintiffs accepted the trucks and used them for two months is irrelevant, at least for the purposes of this motion. The defendants arguably agreed to provide two rock trucks that were in satisfactory condition and met state safety requirements. If, as the plaintiffs allege, the defendants delivered defective trucks and then took no steps to cure the problems after being notified, there is a sufficient basis to go forward on a claim for breach of contract. Whether this is a correct interpretation of he Equipment Agreement cannot be decided as a matter of law on the pleadings before the Court.

Therefore, the motion to dismiss Count I for failure to state a claim, like the motion to dismiss for lack of personal jurisdiction, is denied.

## IV.

Although there is personal jurisdiction over the defendants for Count I, the plaintiffs must show jurisdiction over the defendants for each cause of action. *Landau*, 2003 WL 22097989, at *3; *Cosmetech Int'l*, 943 F.Supp. at 317. With respect to Counts II and III, however, the plaintiffs have not set forth a sufficient showing of jurisdiction for all of the allegations in those Counts.

 Count II alleges unjust enrichment. It seems to focus primarily on the agreement regarding the two rock trucks and the fact that Potter did not return the installment payments made by the plaintiffs. (*See* Compl. ¶¶ 60–65.) To the extent that Count II seeks to recover the amounts paid under the Equipment Agreement, it arises out of the Settlement Agreement, and for the reasons explained above, the plaintiffs can proceed with that part of Count II. The only allegation distinguishable from Count I is that the defendants withheld $2561.80 in coal sales owed to the plaintiffs. (*See* Compl. ¶¶ 66–67.) However, the payments are allegedly for coal from the mine site in Pennsylvania. There is no allegation how this was, or arose from, a transaction of business in New York. Similarly, Count III claims fraud and unjust enrichment, but none of the factual allegations concern activity, whether business-related or tortious, by the defendants in New York. All activity is alleged to have occurred in Pennsylvania.[6]

---

6. The plaintiffs have only attempted to assert personal jurisdiction pursuant to the "transaction of business" prong of § 302(a)(1). They have not attempted to assert specific jurisdiction under § 302(a)(3), which provides for jurisdiction over a defendant who, in person or through an agent, commits a tortious act without the state causing injury to a person or property within the state, so long as certain other jurisdictional prerequisites are met such as that the defendant has a substantial connection to the state or to interstate or international commerce. *See* N.Y. C.P.L.R. § 302(a)(3).

■ The plaintiffs do claim that Potter transacted business under Section 302(a)(1) by sending facsimiles and mail to the plaintiffs in New York. (Opp.Mot.¶ 17.) In addition, Potter is alleged to have sent checks to Ainbinder in West Hempstead, ·New York. (*Id.* ¶ 18.) It is clear under New York law, however, that those contacts are insufficient to meet the requirements of Section 302(a)(1). *See, e.g., Landau,* 2003 WL 22097989, at *5 (explaining that "New York courts have consistently held" that unless the "center of gravity" of business transacted is in New York, telephone and mail contacts will not generally suffice to confer jurisdiction); *Roper Starch Worldwide, Inc. v. Reymer,* 2 F.Supp.2d 470, 474–75 (S.D.N.Y.1998) (reasoning that phone calls, faxes and mailings, and sending payments to New York are not sufficient to create jurisdiction); *see also Unlimited Care, Inc. v. Visiting Nurse Ass'n,* 42 F.Supp.2d 327, 331 (S.D.N.Y.1999) (declaring that mailing payments to the plaintiff in New York did not convey jurisdiction under the long-arm statute); *Palace Exploration Co. v. Petroleum Dev. Co.,* 41 F.Supp.2d 427, 433 (S.D.N.Y.1998) (finding it "well-settled" that, "generally, telephone and mail contact do not constitute 'transacting business' under the statute"); *Granat v. Bochner,* 268 A.D.2d 365, 702 N.Y.S.2d 262, 263 (1st Dep't 2000) (concluding that sending faxes and making telephone calls, without more, did not qualify as transacting business). Accordingly, the plaintiffs have failed to make a prima facie showing of personal jurisdiction over the defendants with respect to Count II's claim of unjust enrichment relating to coal sales and Count III. With respect to those claims, the motion to dismiss under Fed.R.Civ.P. 12(b)(2) is granted.

■ In addition to failing to allege a basis for personal jurisdiction, the plaintiffs have not alleged sufficient factual bases for all of the claims in Counts II and III. Count II is an unjust enrichment claim seeking $10,116.51. As stated above, the bulk of that figure involves the installment payments on the rock trucks. (Compl.¶ 65.) Because the plaintiffs are proceeding pro se, it is proper for the Court to "read the pleadings ... liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson,* 174 F.3d at 279 (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). The elements for unjust enrichment are: (1) that the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendants to make restitution. *See, e.g., Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.,* 273 F.3d 509, 519 (2d Cir.2001).[7] If the allegations made in Count I are incorporated into Count II, there is a basis for a claim that: (1) the defendants allegedly received installment payments (2) from the plaintiffs (3) under circumstances where the trucks allegedly were defective and could not be used fully. Whether this claim is valid cannot be determined on the basis of the pleadings at this stage.

■ The plaintiffs also allege in Count II that the defendants have withheld $2561.80 in coal sales owed to the plaintiffs. (*Id.* ¶ 66.) The Complaint, however, provides no factual context or legal basis for the asserted right to the proceeds of those sales. Moreover, in their Reply, the plaintiffs make no attempt to explain the unjust enrichment claim in Count II, effectively abandoning the claim. Therefore, with respect to Count II, the allegations as to the installment payments on the rock

---

7. The elements for unjust enrichment under Pennsylvania law are essentially the same.

*See Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 622 (Pa.Super.1999).

trucks may proceed because there is personal jurisdiction over the defendants based on the Settlement Agreement and because the plaintiffs have put forward sufficient allegations to state a claim. With respect to the $2561.80 in coal sales, the plaintiffs' allegations are insufficient to show specific jurisdiction over the defendants or the existence of a viable claim. The defendants' motion to dismiss, therefore, is granted with respect to the claim in Count II for damages arising out of allegedly withheld coal sales.

Count III alleges unjust enrichment, as well as fraud. The plaintiffs' claim appears to be that the defendants either diverted funds given to Bernice by the plaintiffs to mine sites other than the Barca Pit (Compl.¶ 76); or that Potter intentionally neglected the Barca site in order to mine other properties (Opp.Mot.¶ 30); or that Potter attempted to defraud the state and federal governments, illegally mining neighboring pits in a way that somehow hurt the plaintiffs (Compl. ¶¶ 77–94; Opp. Mot. ¶¶ 32–35). However framed, the plaintiffs have not put forward a valid claim. Even reading the pleadings liberally, the plaintiffs have not coherently alleged how the defendants were unjustly enriched at the plaintiffs' expense.

■ Moreover, the plaintiffs have failed to allege the elements for a claim of fraud: (1) that there was a material, false representation, (2) made with knowledge of its falsity (3) and with the intent to defraud, (4) upon which the plaintiffs reasonably relied, (5) causing the plaintiffs damage. *See, e.g., Kregos v. Assoc. Press,* 3 F.3d 656, 665 (2d Cir.1993). In addition, the plaintiffs failed to plead their fraud claim with particularity, as required under Federal Rule of Civil Procedure 9(b). *See · Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989) (explaining that Rule 9(b) requires plaintiffs to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements").[8]

It cannot be determined at this stage of the pleadings that the plaintiffs will be unable to replead the allegations to state viable causes of action and bases for jurisdiction for Count II relating to unjust enrichment from coal sales and for Count III. Therefore, Count II, with respect to the allegations for unjust enrichment from coal sales, and Count III are dismissed without prejudice. However, that portion of Count II alleging unjust enrichment as a result of payments by the plaintiffs to the defendants for the two rock trucks is not dismissed.

## V.

The defendants have moved, in the alternative, for a transfer of venue to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).[9] Section 1404(a) provides:

---

**8.** The defendants also argue that Count III should be precluded under res judicata. However, the issue of res judicata could not be decided on the current papers.

**9.** The defendants contend, as a threshold matter, that venue in New York is improper under 28 U.S.C. § 1391, which governs venue in cases brought under diversity jurisdiction. Under § 1391(a)(2), venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." A substantial portion of the events giving rise to the claim in Count I-and the unjust enrichment claim relating to the truck equipment in Count II-occurred in New York because the Settlement Agreement was negotiated and finalized in New York and the payments were to be made by the plaintiffs from New York. *See, e.g., Sacody Tech. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (holding that transmission of an allegedly breached agreement from and to offices in New York was sufficient for venue to be in the S.D.N.Y.).

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In ruling on a motion to transfer, the Court should consider both the interest of the litigants and the public interest. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The interest of the litigants includes the plaintiffs' initial choice of forum; the convenience of the parties and the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for the attendance of witnesses; the location of relevant documents and other tangible evidence; questions as to the enforceability of a judgment if one is obtained; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.; see also Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 966–67 (2d Cir.1988); *Calavo Growers of Ca. v. Generali Belgium*, 632 F.2d 963, 966–67 (2d Cir.1980); *Jasol Carpet, Inc. v. Patcraft Commercial Carpet, Inc.*, No. 96 Civ. 3064, 1997 WL 97831, at *3 (S.D.N.Y. Mar. 6, 1997); *Elite Parfums, Ltd. v. Rivera*, 872 F.Supp. 1269, 1271 (S.D.N.Y.1995); *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989). The public interest includes administrative difficulties that follow from court congestion, a local interest in having localized controversies decided at home, and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action. *See Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839.

The burden of establishing the propriety of a change of forum under 28 U.S.C. § 1404 rests on the moving party. *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978); *Elite Parfums*, 872 F.Supp. at 1271. In determining whether to transfer venue, the Court has "broad discretion" to consider "notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992). The plaintiffs' choice of forum, however, should not be disturbed unless the balance of these factors tips decidedly in favor of a transfer. *Jasol Carpet*, 1997 WL 97831, at *3.

█ The defendants urge the Court to transfer the case to the Middle District of Pennsylvania because the Equipment Agreement was signed there, the contract was performed at the Barca Pit in Pennsylvania, and most of the witnesses would likely be found there. The defendants, however, have not met the burden to transfer under § 1404(a). The plaintiffs are New York residents and their choice of forum is entitled to great weight. The only remaining claims in this case involve the Settlement Agreement, which was negotiated in New York in relation to a New York litigation, and the Court clearly has an interest in enforcing the agreements that settled the litigation in this Court. Although the defendants assert that "most of the witnesses" are located in Pennsylvania, they do not specify a single witness or describe why hearing the case in New York would create a significant inconvenience. The most important witnesses almost certainly will be the parties themselves, and the plaintiffs are New York residents while the defendants are not even residents of Pennsylvania.

The plaintiffs' choice of forum is entitled to substantial deference and the defendants have not carried their heavy burden in disturbing that choice. The motion to transfer venue is denied.

### Conclusion

For the reasons explained above, the defendants' motions to dismiss or transfer Count I are denied. Count II in respect to

the claim to coal sales and Count III are dismissed without prejudice.

**SO ORDERED.**